Thomas R. ST. MARTIN and Jean Q.
St. Martin, Appellants,

v.

Dr. Robert D. DOTY and Holston Valley
Community Hospital, Appellee.

Court of Appeals of Tennessee,
Western Section.

Dec. 13, 1972.

Certiorari Denied by Supreme Court
April 2, 1973.

Whitworth Stokes of Boasberg, Granat & Kass, Washington, D. C., for appellants.

M. Lacy West, of West & DeVault, Kingsport, for appellee, Dr. Robert D. Doty.

Joe W. Worley, of Wilson, Worley, Gamble & Dodson, Kingsport, for appellee, Holston Valley Community Hospital, Inc.

NEARN, Judge.

This is a medical malpractice case where directed verdicts were entered for defendants. Plaintiffs have appealed and cited as error the action of the Trial Judge in directing the verdicts.

On May 15, 1970, plaintiff Jean Q. St. Martin filed her suit against Dr. Robert D. Doty and Holston Valley Community Hospital, Inc. which alleged that on June 9, 1969, she was hospitalized at the defendant hospital, for purposes of surgery to be performed by her private physician, defendant Doty; that Dr. Doty performed a hysterectomy on plaintiff and that Dr. Doty and the nurse employees of the hospital negligently failed to remove and allowed to remain within the body of plaintiff, a sponge. The Declaration charged that the failure to remove the sponge "caused, or contributed to, or aggravated an infectious condition in plaintiff" resulting in prolonged discomfort, pain and suffering to the plaintiff. Further, that this weakened condition of plaintiff caused, or contributed to, or made plaintiff more susceptible and less resistant to the infection caused by the sponge and also the disease of hepatitis which plaintiff contracted. All of which caused plaintiff pain, suffering and permanent injury.

The husband, Thomas St. Martin, filed his Declaration alleging the same facts and charging that the negligence of the defendants caused him loss of his wife's services and incurrence of medical expenses, present and *in futuro*.

On November 8, 1971, plaintiff, Jean Q. St. Martin filed an Amended Declaration which alleged that plaintiff received two blood transfusions while confined to the hospital on her initial confinement and as a result of these transfusions, plaintiff incurred infectious hepatitis which required additional hospital confinement. The Amended Declarations charged that the transfusions were negligently administered and as a proximate result of the negligent failure of the hospital, acting upon the instructions of defendant Doty, to take reasonable and proper precautions to administer blood free from impurities and disease, plaintiff was caused to endure additional pain and suffering.

The defendants filed various Pleas to the Declarations and finally answered. The ruling of the Trial Judge on the various Pleas filed is not cited as error, for all rulings were in favor of the plaintiff. We therefore will not consider the action of the Trial Court in those instances.

The Answer of the defendant hospital denied all acts of negligence on the part of its agents, servants or employees.

The Answer of Dr. Doty denied all acts of negligence on his part; denied that any surgical sponges were left in plaintiff's body, but averred that a medicated sponge pack was left in plaintiff's vagina which was the proper thing to do in hysterectomy operations, and that the medicated pack caused no infection, weakness, hepatitis or other injury.

At the close of plaintiff's proof, the Trial Judge sustained motions of the defendants to direct a verdict for defendants on the Amended Declaration.

Counsel for appellants cites that action of the Trial Judge as error and argues that plaintiff's proof raised a question of fact for the jury as to the claim alleged in the Amended Declaration.

It is the duty of this Court in reviewing the action of a Trial Court in directing a verdict to examine all the evidence presented on the issue, take the

strongest legitimate view of the proof in favor of the complaining party, discard all countervailing evidence, resolve all disputes as to any material evidence or doubt as to conclusions to be drawn from the evidence, all in favor of the complaining party. Poole v. First Nat. Bank of Smyrna (1946 M.S.) 29 Tenn.App. 327, 196 S.W.2d 563 and many others. However, applying this rule to this case presents some difficulty as we are unable to find any competent proof in the record on the issue of the causation of the hepatitis or negligence in the administration of the transfusions from which to draw any conclusions in favor of the plaintiff. As to the *nexus* between plaintiff's hepatitis and the blood transfusions, plaintiff's proof showed only that it was a possibility that the transfusions induced hepatitis. Plaintiff's medical proof on the subject on cross-examination revealed the following:

"Q. What I was really getting at, Doctor, that although medicine is very exact, in the setting with which you dealt here and the problem with which you dealt, it's really not possible to say with any degree of medical certainty what caused that lady's hepatitis, was it?

A. As is usually the case, the diagnosis of viral induced hepatitis is based upon the clinical setting with an appropriate incubation period, a blood picture that is compatible with a viral infection, and clinical findings and clinical symptoms resembling viral induced hepatitis, and that is not exact.

Q. It's just a choice of what you regarded as the likeliest of several possibilities?

A. That's exactly right.

Q. It really was a choice of possibilities rather than of medical certaintites [sic] in diagnosis?

A. That's correct."

■ We do not believe that the foregoing rises to the dignity of competent proof of causation. However, even if we could stretch the "possibilities" into "probabilities" it would avail the appellant nothing. If, *arguendo*, we could say that the blood given the plaintiff caused her to contract hepatitis, the burden would yet be on the plaintiff to show some negligence on somebody's part, such as, the failure to take the proper care under known standards in the processing of blood. There is absolutely no hint of any proof on this subject. Realizing this fact, counsel for appellants argues that the doctrine of strict liability is applicable to the case. This argument overlooks two things. First, such theory was not contained in the pleadings. Second, the doctrine as set out in Section 402–A, Restatement of the Law of Torts, cannot, in this state, be applicable to the distribution of blood.

The gist of 402–A is that even if a *seller* has exercised all possible care yet *sells* an unreasonably dangerous, defective product which causes injury, liability, *ipso facto*, ensues. However, the Legislature of this state has seen fit to declare that the distribution of blood shall not be considered to be a sale of goods, but "shall be considered a medical service". T.C.A. § 47–2–316. Therefore, it was incumbent upon the plaintiff to show negligence on the part of the defendants in the processing, distribution or administration of the blood. That proof is totally lacking. The Trial Judge did not err in directing a verdict as to the Amended Declaration and the Assignment of Error is overruled.

■ There is the same dearth of proof in regard to the allegations of the original Declaration. Plaintiff's proof showed that a sponge type medical pack was left in the vagina for approximately twenty days. Plaintiff testified that this caused her to have high temperatures, periods of unconsciousness, infection and an unpleasant odor about her body. No medical proof whatsoever was introduced by

the plaintiff in regard to medical negligence in leaving the medicated sponge pack in plaintiff's body, nor was there any medical proof as to any causal connection between the medicated sponge pack and plaintiff's difficulties. No one testified that Dr. Doty did not follow a medically recognized course of procedure in the performance of the hysterectomy or in his post operative treatment of plaintiff. Dr. Doty testified that the hysterectomy was performed from below, that is, through the vagina and admitted that he left the medicated sponge pack in plaintiff's vagina but testified that this was good medical practice as its purpose was to keep down infection in the area excised and aid in plaintiff's recovery. Dr. Doty admitted that when plaintiff was initially released from the hospital that he intended to remove the pack, but was unable to locate it and thought that it had fallen out. Considerable point is made of this fact by counsel for appellants but the only medical testimony on its effect is from Dr. Doty who testified that he was not particularly concerned about not finding the pack as a search for it at that time would cause considerable discomfort to plaintiff due to the soreness and swollen nature of the area caused by recent surgery and that he was to see plaintiff again in four weeks when he could better examine her and easily remove the pack at that time and that such medicated packs were often left inserted for as much as four weeks. That he removed the medicated pack approximately twenty days after surgery and ten days after her initial discharge from the hospital when plaintiff returned to the hospital in a jaundiced condition. That the pack had nothing to do with the jaundiced condition or any other complaints of plaintiff and that a certain amount of malodor was associated with such cases. It would be mere supererogation to continue with the medical testimony that refutes plaintiff's claim.

In cases such as this involving medical negligence and proximate causes of injuries, infections etc. expert testimony is required. See Redwood v. Raskind (1961 W.S.) 49 Tenn.App. 69, 350 S.W.2d 414. The only medical proof is contrary to plaintiff's theory of the case. Counsel for appellant argues that where a sponge is left in a plaintiff's body no medical proof of negligence is necessary as any layman would know that fact and cites as authority for that proposition French v. Fischer (1962 W.S.) 50 Tenn.App. 587, 362 S.W.2d 926; Rural Educational Association v. Bush (1956 M.S.) 42 Tenn.App. 34, 298 S. W.2d 761 and Harrison v. Wilkerson (1966 E.S.) 56 Tenn.App. 188, 405 S.W.2d 649. The difference in those cases and the instant case is that they involve *surgical* sponges which were left within the peritoneal or abdominal cavity. In the instant case, the sponge in question is not a surgical sponge but is actually a medicated sponge pack similar in nature and purpose to a Tampax. There is just a world of difference in the objects and their purposes. Surgical sponges left in the peritoneal cavity are never left there intentionally but are left in unintentionally through error and certainly serve no useful purpose sewed up in a person's interior, while the medicated sponge pack in this case is in the nature of bandage and is applied and allowed to remain intentionally, serves a purpose while so applied and is removable without surgery.

We find no error in the Trial Court's action in directing a verdict for the defendants at the close of all the proof as there just was no proof for the jury to consider. The remaining Assignment of Error is overruled.

The judgment of the lower Court is affirmed with cost of this appeal adjudged against the appellants and the sureties on their bonds.

CARNEY, P. J., and MATHERNE, J., concur.