**Mrs. Helen G. LONGMIRE and Buford E. Longmire, Appellants,**

**v.**

**Dr. David F. HOEY, Appellee.**

Court of Appeals of Tennessee, Western Section.

Feb. 1, 1974.

Certiorari Denied by Supreme Court July 29, 1974.

James L. Jones, Knoxville, for appellants.

McAfee Lee, Knoxville, for appellee.

NEARN, Judge.

This appeal concerns the law of "informed consent" as applied to the doctor-patient relationship.

The Trial Judge directed a verdict for the defendant at the close of plaintiffs' proof. Both plaintiffs have appealed and on appeal the sole question is whether the Trial Judge acted properly in directing the verdict.

The narrowness of the issue in controversy lends itself to a short relation of the facts surrounding the issue.

In February, 1970, the defendant, Dr. David F. Hoey performed a hysterectomy on the plaintiff, Helen G. Longmire. The entire uterus or womb was removed from the body of Mrs. Longmire. Mrs. Longmire knew that a hysterectomy would be performed and that the entire uterus would be removed. A written authorization for the operation was executed by Mrs. Longmire. After an uneventful recovery in the hospital, Mrs. Longmire was discharged from the hospital by the defendant with instructions to return to the defendant's office in about five weeks for a postoperative ex-

amination. The home recuperation was normal until the day before she was to see the defendant, when suddenly Mrs. Longmire found herself incontinent, that is, she was unable to control the flow of urine from her body and the flow was continuous. Mrs. Longmire was again hospitalized and the defendant called in a urologist for consultation. It was discovered that a ureterovaginal fistula, or hole in the ureter, had developed.[1]

Mrs. Longmire filed suit against Dr. Hoey alleging that he had failed to advise her of the risk of a ureterovaginal fistula developing as a result of the hysterectomy and therefore the plaintiff did not effectively consent to the operation. The complaint contained other counts but they are not now material. Mr. Longmire also filed suit but his claim is entirely derivative from that of his wife's.

Dr. Hoey was called to the stand by plaintiffs' counsel and admitted that he did not discuss with the plaintiff the risk of a ureterovaginal fistula developing as a result of the hysterectomy before obtaining consent for the operation.

We should here point out that no proof was offered of any negligence on the part of the defendant in the performance of the hysterectomy or his treatment of the plaintiff and it is not contended on appeal that the defendant was negligent in the performance of his skills.

█ There can be do doubt that Tennessee recognizes an action under the doctrine of "informed consent". In the case of Ray v. Scheibert (1969) 224 Tenn. 99, 450 S. W.2d 578, our Supreme Court clearly recognized the duty of a physician to properly advise a patient before obtaining a consent for an operation. In that case, a petition to rehear was filed after the Supreme Court had announced its decision which petition charged that the Court in the course of its opinion, which remanded for a new trial, had intimated that the plaintiff's count based on battery was unavailable on the new trial. The Supreme Court has-

tened to point out that such was not its intention for the declaration charged a battery in that it was charged "that the plaintiff did not effectively consent—therefore, did not consent at all—to the operation—." The Court further stated that if the allegations of the declaration were proved, a recovery could be had.

The case was tried again on the remand and appealed again. Judge Puryear, speaking for the Middle Section of this Court, in the course of his opinion discusses the nature of this type of action and distinguishes it from malpractice or negligence cases. The Court's opinion is found reported as Ray v. Scheibert (1972 M.S.) Tenn.App., 484 S.W.2d 63. There is no need for us to here repeat it in an attempt to "gild the lily".

The question now before us is whether the plaintiff has made out her case under "informed consent", to such extent that reasonable minds might come to different conclusions from the proof adduced.

It is uncontradicted that the ureter was undisturbed in the hysterectomy. In other words, the ureter was not nicked, cut, bruised or touched during the operation.

As before stated, Dr. Hoey admitted that he did not advise the plaintiff of the risk of the complication of a ureterovaginal fistula. He testified that he did not advise plaintiff because it did not occur to him to do so as such a complication was relatively rare in occurrence following a hysterectomy. In the over 3,000 hysterectomies that Dr. Hoey had performed, this instance was the first. He further testified that some texts indicate such a complication following surgery could occur in 1% to 12% of cases, dependent upon the physical condition of the patient prior to surgery. The high side of the percentage figure occurred in those cases where the patient also suffered from cancer. Mrs. Longmire did not have cancer.

Counsel for appellant argues that since the complication does occur in some instances (at least 1%) the defendant should

---

1. The ureter is the tube which carries urine from the kidney to the bladder.

have advised the plaintiff of the risk as, at the least, a jury issue was made on whether or not he should have so advised the plaintiff prior to obtaining consent for the operation.

We are cited to cases from other jurisdictions where the failure to advise of a 1% risk has been the basis of a finding of liability. Bowers v. Talmage (1963 Fla. App.) 159 So.2d 888, Canterbury v. Spence and Washington Hospital Center (1972) 150 U.S.App.D.C. 263, 464 F.2d 772.

We have no particular quarrel with the results reached in other jurisdictions, but we are not of the opinion that proof of any particular percentage figure is determinative of whether or not a plaintiff has made out a *prima facie* case. We are of the opinion that the serious nature of the risk involved is paramount to any percentage figure of occurrence.

Of course, the percentage of risk of occurrence must be considered along with the nature of that which is risked. In the reported cases which have held that failure to advise of a 1% risk or such other low percentage may be a basis for liability, we also find that which was risked was of a devastating nature; such as complete or partial paralyses, blindness or deafness. We readily admit that when such is the nature of the risk reasonable minds might differ on whether or not the patient should have been advised of that risk. There are those who would risk death itself before a lifetime of paralyses or blindness. Others might prefer to suffer a certain amount of pain rather than risk such disastrous results. The occurrence risked may itself be of great magnitude while the percentage of its occurrence may be small.

We hold that in matters of this type the burden of proof is on the plaintiff to show that (a) the operation was not actually authorized or (b) the physician withheld material information regarding the risks involved which prevented the patient from making an intelligent or free choice in giving a consent.

In those cases which are tried on theory (b) the withheld information must be of such nature as to vitiate any verbal or written consent given without the benefit of that information.

Although not of itself necessarily controlling, we cannot help but note that plaintiff never claimed that she would have made any other choice than the one she made, even if she had been advised of the possibility of a fistula developing. A physician is not required to enumerate in detail every aspect of surgery or every possible thing that might go wrong. In the first place, to do so is humanly impossible. In the second place, if all the gory details of a proposed surgery were graphically explained to every patient and all possible medical maladies that might result were enumerated we doubt that a lay person would have the stomach to listen to it all; and if the patient did, would probably be in such a fearful state that no rational decision could be made. Thirdly, as noted by the Trial Judge, in order to hold a physician to such a duty "you would have to have the patient take a medical course in order to perform surgery".

It is our opinion that in this case the development of a fistula in an area not associated with the surgery was not the type of risk that the defendant was bound to disclose nor was it of such a material nature that the lack of that particular information could be considered as an invalidation of the consent previously given. Further, we are of the opinion that reasonable minds could not disagree on that point.

Therefore, we find no error in the action of the Trial Judge in directing a verdict for the defendant and affirm his action.

Costs of this appeal are adjudged against the appellant and the surety.

CARNEY, P. J., and MATHERNE, J., concur.