**Lois SAWYER and David Sawyer, Plaintiffs-Appellants,**

v.

**METHODIST HOSPITAL et al., Defendants-Appellees.**

**No. 75–1079.**

United States Court of Appeals, Sixth Circuit.

Aug. 18, 1975.

Michael Avedisian, Avedisian & Avedisian, Paducah, Ky., for plaintiffs-appellants.

E. Brady Bartusch, Albert T. McRae, Gavin M. Gentry, Leo Bearman, Jr., Memphis, Tenn., for defendants-appellees.

Before PHILLIPS, Chief Judge, and WEICK and EDWARDS, Circuit Judges.

PHILLIPS, Chief Judge.

This diversity case requires us to apply the law of Tennessee in assessing the possible tort liability arising from transfusions of allegedly contaminated blood.

On May 2, 1972, Lois Sawyer was admitted to Methodist Hospital in Memphis, Tennessee, for surgery to remove her gallbladder and to repair a hiatal hernia. The operation was performed successfully by Dr. Battle Malone on the following day. Because Mrs. Sawyer had lost an unusually large amount of blood during surgery, Dr. Malone directed that she receive transfusions of two pints of whole blood. Neither Mrs. Sawyer nor her husband, David Sawyer, was warned of the risks involved in a blood transfusion. The units of blood administered to Mrs. Sawyer had been obtained by Methodist Hospital from the John Gaston Hospital Blood Bank, which is a department or division of the City of Memphis Hospitals. Once the blood had been received by Methodist Hospital, it was under the general supervision of the Duckworth Pathology Group, Inc., an independent professional corporation that is located in the Hospital and provides pathology services, including testing, typing, and cross-matching of blood.

Mrs. Sawyer was discharged from Methodist Hospital on May 13, 1972, but her recuperation was marred by continuing nausea and diarrhea. Her condition failed to improve, and on June 16, 1972, it was determined that she was suffering from active serum hepatitis. This illness remained with Mrs. Sawyer until it caused her death on February 17, 1975.

In April 1973, Mr. and Mrs. Sawyer instituted this action in the District Court against Methodist Hospital, Duckworth Pathology Group, Dr. Malone, and City of Memphis Hospitals. The complaint alleged that the blood transfused into Mrs. Sawyer was contaminated and was the cause of her hepatitis. Liability was predicated upon negligence, warranty, and strict liability. In a series of pretrial orders, District Judge Harry W. Wellford dismissed the claims against the City of Memphis Hospitals on the basis of governmental immunity, and he dismissed all warranty and strict liability claims on the authority of T.C.A. § 47–2–316. At the close of plaintiffs' evidence, Judge Wellford granted defendants' motion for a directed verdict on the issue of negligence. All of the District Court's orders are reported together at 383 F.Supp. 563 (W.D.Tenn.1974). In his own behalf and as representative of his wife's estate, David Sawyer now appeals from each of these rulings.

■ In Tennessee the general rule is that the operation of a nonprofit municipal hospital is a governmental function to which the doctrine of sovereign immunity applies. *Webb v. Blount Memorial Hospital*, 303 F.2d 437 (6th Cir. 1962); *McMahon v. Baroness Erlanger Hospital*, 43 Tenn.App. 128, 306 S.W.2d 41 (1957); *see City of Memphis v. Bettis*, 512 S.W.2d 270, 273–74 (Tenn.1974). It also appears that a municipal hospital may waive its immunity by obtaining liability insurance. *McMahon v. Baroness Erlanger Hospital, supra.* In the case at bar, the City of Memphis Hospitals is a medical complex owned and operated by the City of Memphis. It operates at a substantial deficit that is absorbed by the City of Memphis and by Shelby County, and it carries no liability insurance. We conclude that the City of Memphis Hospitals is immune from liability and that the claims against it were properly dismissed.

We recognize that in *Johnson v. Oman Construction Co.*, 519 S.W.2d 782, 786 (Tenn.1975), the Tennessee Supreme Court expressed its dissatisfaction with the doctrine of sovereign immunity. Nevertheless, the court affirmed the dis-

missal of certain claims on the basis of governmental immunity, concluding that the doctrine should not be abrogated judicially without affording the Legislature an opportunity to act on this issue. Thus it appears that Tennessee may join the growing number of states that have abolished or substantially modified sovereign immunity. Until that occurs, however, governmental immunity remains a part of the law of Tennessee, and it must be applied in this case.

■ In addition, we have no doubt that Judge Wellford correctly dismissed the claims based on warranty and strict liability. In 1967, Tennessee added the following section to its version of the Uniform Commercial Code:

> The implied warranties of merchantability and fitness shall not be applicable to a contract for the sale, procurement, processing, distribution or use of human tissues (such as corneas, bones, or organs), whole blood, plasma, blood products, or blood derivatives. Such human tissues, whole blood, plasma, blood products, or blood derivatives shall not be considered commodities subject to sale or barter, and the transplanting, injection, transfusion or other transfer of such substances into the human body shall be considered a medical service. T.C.A. § 47–2–316(5).

Under this section neither warranty liability not strict liability in tort can arise from a transfusion of blood. *McDaniel v. Baptist Memorial Hospital*, 469 F.2d 230 (6th Cir. 1972); *St. Martin v. Doty*, 493 S.W.2d 95 (Tenn.Ct.App.1972). Section 47–2–316(5) squarely controls the case at hand and requires us to affirm the dismissal of plaintiff's warranty and strict liability claims.

We come finally to plaintiff's contention that Judge Wellford improperly directed a verdict in favor of defendants on the negligence issue. In directing the verdict, the District Court was required:

> to look to all the evidence, to take as true the evidence for the plaintiff, to discard all countervailing evidence, to

take the strongest legitimate view of the evidence for the plaintiff, to allow all reasonable inferences from it in his favor; and if then there is any dispute as to any material determinative evidence, or any doubt as to the conclusion to be drawn from the whole evidence, the motion for a directed verdict must be denied. *O'Neill v. Kiledjian*, 511 F.2d 511, 513 (6th Cir. 1975), *quoting Poe v. Atlantic Coast Line R.R.*, 205 Tenn. 276, 284, 326 S.W.2d 461, 464 (1959).

With this standard in mind, we consider first plaintiff's argument that the blood administered to Mrs. Sawyer was not tested adequately for the presence of hepatitis virus. The record in this case reveals that the John Gaston Hospital Blood Bank subjected these two units of blood to the Australia antigen test and obtained negative results. In May 1972, this was the best available test for detecting the presence of hepatitis in whole blood. The effectiveness of the Australia antigen test is not known precisely, but it is clear that even in the best of circumstances a substantial proportion of the contaminated blood subjected to this test escapes detection. Since the blood in question here already had been tested for hepatitis at the John Gaston Hospital Blood Bank, it was not retested upon arrival at Methodist Hospital. This procedure was in accordance with the local practice and with standards established by the American Association of Blood Banks. Expert testimony also indicated that in any event such retesting would have been fruitless—a second Australia antigen test would not have revealed hepatitis virus that had been missed in the first test.

■ On this record we see no evidence of negligence in testing the blood administered to Mrs. Sawyer. Plaintiff failed to prove any deviation from accepted medical practices or from the applicable community standards. *See Chumbler v. McClure*, 505 F.2d 489, 492 (6th Cir. 1974). Even the most rigorous

medical precautions cannot eliminate the risk of hepatitis associated with blood transfusions. Doctors and hospitals, however, are not insurers of their patients' health, and liability does not arise in the absence of some negligent act or omission. *Perkins v. Park View Hospital, Inc.,* 61 Tenn.App. 458, 485–86, 456 S.W.2d 276, 287–88 (1970). The fact that Mrs. Sawyer contracted hepatitis does not require an inference of negligent testing procedures, and plaintiff presented no evidence of such negligence. We conclude that Judge Wellford correctly directed a verdict in favor of defendants on this issue.

It is also contended that tort liability arises from defendants' failure to warn Mr. or Mrs. Sawyer of the risk of hepatitis before proceeding with the blood transfusions. In most jurisdictions, the duty to advise a patient of the danger of adverse complications is treated as a part of the general standard of professional conduct, and recovery depends upon a showing through expert testimony that the failure to warn was inconsistent with the medical standards prevailing in the community. *See Canterbury v. Spence,* 150 U.S.App.D.C. 263, 464 F.2d 772, 783, *cert. denied,* 409 U.S. 1064, 93 S.Ct. 560, 34 L.Ed.2d 518 (1972); W. Prosser, Torts 165–166 (4th ed. 1971). The District Court in the case at hand apparently concluded that Tennessee is among the states taking this view. Since all the evidence indicated that in May 1972 it was not the practice in the Memphis area to warn patients of the possibility of hepatitis before administering blood transfusions, the court naturally found that no jury question had been presented on the defendants' failure to give such a warning. Nevertheless, our examination of the Tennessee cases leaves us with some doubt that this is the rule in Tennessee. For example, in *Ball v. Mallinkrodt Chemical Works,* 53 Tenn.App. 218, 381 S.W.2d 563 (1964), the court approved the following jury instruction given by the trial judge:

It is also the duty of a physician or surgeon to disclose to the plaintiff facts which are necessary to form the basis of an intelligent consent by the patient to the proposed treatment. Where the consequences are serious and substantially certain to occur, it is the physician's or surgeon's duty to disclose such facts to the patient. The physician may not minimize the normal operation in order to induce the patient's consent, at the same time the physician must place the welfare of his patient above all else, and the very fact places him in a position in which he must sometimes choose between two alternate courses of actions, one is to explain to the patient every risk attendant upon any surgical procedure or operation, no matter how remote. This may well result in alarming a patient who is already unduly apprehensive and who may, as a result, refuse to undertake the surgery which there is, in fact, minimal risk. It may also actually increase the risk by reason of the psychological result of the apprehension of it. The other is to recognize that each patient presents a separate problem, that the patient's mental and emotional condition is important and in certain cases may be crucial, and that in discussing the elements of risk a certain amount of discretion must be employed consistent with the full disclosure necessary for an informed consent. *Id.* at 227–28, 381 S.W.2d at 567.

Thus it appears that proof of the prevailing medical practice was not central to the decision in *Ball.* However, even under the rule outlined in *Ball,* it would seem that no duty to warn could have arisen in the case at bar, since hepatitis is far from "substantially certain to occur" as a result of a blood transfusion. Moreover, the record indicates that Mrs. Sawyer suffered from long-standing emotional problems for which she had sought psychiatric treatment. Under *Ball,* such psychological instability is a factor at odds with disclosure of all the risks involved in a medical procedure.

 A more recent and detailed consideration of this problem appears in

*Longmire v. Hoey*, 512 S.W.2d 307 (Tenn.App.1974). In *Longmire*, a skillfully performed hysterectomy resulted in a ureterovaginal fistula, a complication that occurs in at least 1% of hysterectomy operations. Plaintiff filed suit against the surgeon alleging that she had not been advised of the risk of a fistula. In affirming a directed verdict for the defendant, the Court of Appeals did not look to the medical standards prevailing in the community. Rather, the court found the crucial inquiry to be whether the withheld information was "of such nature as to vitiate any verbal or written consent given without the benefit of that information." 512 S.W.2d at 310. In making this determination, the court seemed most concerned with the likelihood that the undisclosed complication would occur and with the severity of the complication. Applying these criteria to the case at bar, we conclude that *Longmire* does not require reversal of the directed verdict granted by the District Court. The likelihood of contracting hepatitis as a result of a blood transfusion is extremely remote. It appears that over the course of five or six years about 60,000 units of blood were administered at Methodist Hospital with only eight cases of hepatitis apparently related to the transfusions—an incidence rate of .013%. In addition, hepatitis, although a serious illness, is not necessarily fatal and frequently responds to treatment. We believe that under *Longmire*, this is not the kind of risk that defendants were bound to disclose before proceeding with the transfusions.

Thus we conclude that regardless which theory of Tennessee law is applied to defendants' failure to warn of the risk of hepatitis, the District Court reached the correct result on this issue.

The judgment of the District Court is affirmed. Costs are taxed against appellants.