**Mildred P. WILLIAMS,**
**Plaintiff-Appellant,**

v.

**M. C. WEST CONSTRUCTION COMPA-**
**NY and Hooker Chemical Company,**
**Defendants-Appellees.**

Court of Appeals of Tennessee,
Middle Section.

Dec. 18, 1978.

Certiorari Denied by Supreme Court
March 12, 1979.

Thomas E. Fox, Franklin, Emory B. Gill, Centerville, for plaintiff-appellant.

Gayle Malone, Jr., Thomas H. Peebles, III, Trabue, Sturdivant & DeWitt, Daniel D. Finch, Finch & McBroom, Nashville, for defendant-appellee M. C. West Const. Co.

Edward C. Blank, II, MacFarland, Colley, Blank & Jack, Columbia, for defendant-appellee Hooker Chemical Co.

EWELL, Judge.

On February 6, 1976, Mildred P. Williams, plaintiff-appellant property owner, filed suit in the Chancery Court of Hickman County, Tennessee, against defendants-appellees, Hooker Chemical Company, owner of mineral rights in land situated near plaintiff's land, and M. C. West Construction Company, independent contracting company employed by Hooker to remove phosphate from said land. Plaintiff insisted that the actions of the defendants, related to the mining operations, had resulted in damage to her land and sought either injunctive relief whereby the Court would order defendants to restore her property to as good a condition as it was prior to the alleged damage or, in the alternative, judgment in the amount of $15,000.00 for damages to her property resulting from the acts of the defendants. The case was heard by Chancellor Alex W. Darnell who found for the defendants and dismissed plaintiff's complaint. The relevant facts are set forth in the Chancellor's Opinion filed in the case as follows:

"The plaintiff owns a 12 acre tract on a secondary road in Hickman County, Tennessee. This property is bordered on the south by a small creek; and the creek passes under the road at the west (sic: east) end of Plaintiff's property. On the north side of this same road there is one-third of an acre belonging to the Plaintiff.

"Beginning in 1972 and over a period following about two years the Defendants removed phosphate from the property on the north side of this secondary road. The actual mining was done by the defendant M. C. West Construction Company. The Plaintiff testified that after the removal of the phosphate began her spring dried up; and the water which she took from her well became muddy (reddish color), in August of 1973. She further testified that because of the ore and dirt removal that water was caused to run across the one-third acre on the north side of the road, causing portions of the one-third acre to be washed away.

"The defendant M. C. West widened this small road adjacent to Plaintiff to two lanes, raised the grade by two or three feet, and replaced the wooden bridge with a culvert. The metal culvert used in place of the bridge was furnished by the Hickman County Highway Department, and the county employees connected the parts of the culvert at the site and fixed the struts on the interior in order for M. C. West employees to make the fill. Prior to widening the road the Plaintiff's deceased husband agreed to give 8–10 feet of his property for that purpose. The Plaintiff never agreed to this and did not talk to anyone about it. During the course of the road widening M. C. West's employees filled a ditch on Plaintiff's property, placed some fence on her property, and modified her driveway leading to the road.

"The Plaintiff claimed that changing the creek crossing from a wooden bridge to a culvert and raising the grade some three feet causing water to back up on her property and especially over her pump (at the corner of the barn) during heavy rains. She stated that approximately one-half acre of her property was covered by water, which had not been the

case before the culvert was put in. She also stated that rocks from the widening of the road are tearing up her fence and that the change in the grade and washing effects keeps her from getting on to her one-third acre across the road.

"All the damages claimed by the Plaintiff were caused (according to her testimony) either by the removal of the phosphate ore on the land across the road from her property, i. e., spring dried up and well water became muddy; or by the change in the road grade, i. e. one-half acre is flooding and the pump at the barn is flooded.

"All of the road changes were made during the life of Plaintiff's husband. The two of them owned the property as tenants by the entirety. Some of the changes were made with permission of the plaintiff's deceased husband. All were made in full view and in the presence of the then joint owners; and no objection or criticism was raised.

"The Court is then of the opinion that some of the damages complained of was work requested by one of the then owners of the property. As to the rise in the water level after the culvert was placed in, the preponderance of the evidence does not show that the water levels over Plaintiff's property, after heavy rain, was materially changed.

"It is not enough to prove that after one act occurred (phosphate ore removal) another happened (spring dried up— water became muddy) and that the proximity of the two acts (a few hundred feet) is the causal connection from which damages may be assessed. The Plaintiff must show the causal connection between these acts before a court may assess damages against defendants.

"Wherefore, this action against each and all the defendants and upon all counts is hereby dismissed."

Plaintiff appealed and assigned as error the action of the Trial Court in:

(1)  holding that the plaintiff was barred from recovery from the changes and alterations in the road because the plaintiff's husband gave permission for the changes to be made, and they were made in the presence of both the plaintiff and her husband without objection or criticism;

(2)  holding that the flooding of plaintiff's property was not substantially or materially increased because of the defendant's work on the road;

(3)  holding that there was no causal connection between the mining done by the defendant and the damage to plaintiff's well and spring; and,

(4)  disallowing evidence that the damage to plaintiff's property from defendant's action amounted to thirty to forty percent of its value.

■ The entire record in this case has been reviewed de novo as required by T.C.A. 27–303, and it is our opinion that the evidence does not preponderate against the holding of the lower court. The case comes to us with a presumption of the correctness of the decree of the court below and unless the evidence preponderates against that holding, it must be affirmed. Edwards v. Edwards, 501 S.W.2d 283 (Tenn.App.1973); Davis v. Bank of Illinois, 561 S.W.2d 145 (Tenn.1978); Pettyjohn v. Brown Boveri Corporation, 63 Tenn.App. 546, 476 S.W.2d 268 (1971); Tipton County Board of Education v. Dennis, 561 S.W.2d 148 (Tenn.1978).

■ We find that the Chancellor did not specifically hold as alleged by plaintiff in her first assignment of error. He did find that some of the work complained of was done at the request of or with the permission of plaintiff's deceased husband; that all such work was done in the full view and presence of both joint owners; and that no objection or criticism was raised. The proof in the record clearly supports these findings.

The second assignment of error relates to the holding of the Chancellor with respect to the affect on plaintiff's property resulting from the changes and alterations in the

road. The Chancellor found that the preponderance of the evidence failed to show that the water level on plaintiff's property after heavy rain was materially changed. It is apparent that for many years the property of the plaintiff had been adversely affected by the overflow of Dunlap Creek during periods of heavy rainfall and that at such times the excess water ran off plaintiff's property by flowing along Dunlap Creek in a northerly direction under and/or over the wooden bridge on the secondary road bounding plaintiff's property on the north.

The proof shows that W. M. Coleman, a magistrate of Hickman County, was instrumental in making arrangements for the alterations in the road, and that C. W. Garner, Road Superintendent of Hickman County, participated in the alterations to the extent of furnishing the galvanized pipe six feet in diameter which was used to replace the wooden bridge. County employees delivered and unloaded the pipe which was in two sections, bolted the two sections together and fortified the pipe with struts. Thereafter it was installed by M. C. West Construction Company in connection with the other road work done by that company. It is undisputed that the road is a public road which was generally maintained by the county both before and after the alterations.

■ While we concur in the finding of the Chancellor to the effect that the preponderance of the evidence did not show that the water level on plaintiff's property after heavy rainfall was materially changed, we find there was competent proof that since the wooden bridge was replaced by the galvanized pipe, the water at times of heavy rainfall backs up in greater quantities on the property of plaintiff. This occurs because the water cannot escape as fast through the galvanized pipe as it previously had done before the bridge was removed and the pipe installed. The only reasonable conclusion to be drawn from all the proof is that the galvanized

pipe was not large enough in diameter to accommodate the quantity of water which flows through it during periods of heavy rainfall. There was no proof that the pipe was negligently installed; the problem, if any, results from the fact that the pipe selected, furnished, and delivered by the county was too small. It is a well settled rule in this state that a contractor constructing a public improvement for a public authority is not liable to a private property owner for the resulting damages where the contractor acts in accordance with the public authority's orders and is not itself guilty of negligence in the manner in which it does the work. *Wood v. Foster & Creighton Co.,* 191 Tenn. 478, 235 S.W.2d 1 (1950). See also *Knoxville v. Harth and Knoxville v. Galbraith,* 105 Tenn. 436, 58 S.W. 650 (1900); *City of Knoxville v. Hunt,* 156 Tenn. 7, 299 S.W. 789 (1927); and *City of Knoxville v. Phillips,* 162 Tenn. 328, 36 S.W.2d 434 (1931).

■ In her third assignment of error plaintiff insists that the Trial Court erred in holding that she failed to establish a causal connection between mining done by the defendants and the alleged damage to her wells and spring. We find no proof in the record establishing or tending to establish a causal connection between the mining operation of the defendants and the fact that plaintiff's wells became muddy and her spring dried up. Plaintiff insists that the fact that these events occurred after the mining operation had begun constituted circumstantial evidence sufficient to support a judgment for damages against the defendant. We are unable to find in the record the necessary connection between the proven facts and the results claimed to justify an inference of responsibility. The rule is universal that no recovery can be had if the evidence leaves it to conjecture which of two probable causes resulted in the injury, where the defendant was liable for only one of them. *Tennessee Electric Power Co. v. Van Dodson,* 14 Tenn.App. 54 (1931). See also *Brown v. Hudson,* 50 Tenn.App. 658, 363 S.W.2d 505 (1962).

The fourth assignment of error is directed to the action of the Trial Court in refusing to consider the opinion of an expert witness to the effect that the value of the plaintiff's property had been decreased by thirty to forty percent when he testified that he was unable to express an opinion as to the value of the property prior to the commencement of mining operations and road alterations. We find that the Chancellor did not abuse his discretion in refusing to consider the opinion of the expert under these circumstances, which opinion was rendered immaterial upon a finding of no liability on the part of the defendants.

Accordingly, the four assignments of error are overruled and the judgment of the Trial Court is affirmed in all respects. The costs of the cause are assessed against the appellant and the sureties on her appeal bond.

TODD and DROWOTA, JJ., concur.