Isle BOCK, Individually and as Next of Kin, Surviving Spouse, Next Friend, and Personal Representative of Hans Bock, deceased, Plaintiff,

v.

UT MEDICAL GROUP, INC., Defendant.

No. 08–2650–STA–cgc.

United States District Court, W.D. Tennessee, Western Division.

Feb. 12, 2013.

Daniel Alan Seward, Law Office of Daniel Seward, Memphis, TN, for Plaintiff.

Jerry O. Potter, Jennifer S. Harrison, The Hardison Law Firm, Memphis, TN, for Defendant.

## ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

S. THOMAS ANDERSON, District Judge.

Before the Court is Defendant UT Medical Group, Inc.'s ("UTMG") Motion for Summary Judgment (D.E. # 134) filed June 26, 2012. The Court referred this Motion to United States Magistrate Judge Charmiane G. Claxton for issuance of a report and recommendation in an order dated August 2, 2012. (D.E. # 141.) Plaintiff Isle Bock ("Plaintiff" or "Mrs. Bock") filed a response to this Motion on August 3, 2012. (D.E. # 145.) Judge Claxton issued a report and recommendation on November 8, 2012, recommending this Court grant UTMG's Motion. (D.E. # 154.) Bock filed objections to the report and recommendations on November 27, 2012. (D.E. # 156.) For the reasons set forth below, the Court hereby **ADOPTS** the magistrate judge's report and recommendations, **OVERRULES** Bock's objections to same, and **GRANTS** UTMG's Motion for Summary Judgment.

### BACKGROUND

This case is a medical malpractice suit filed by Bock on behalf of her deceased husband, Hans Bock ("Mr. Bock"). Mr. Bock received treatment from UTMG physicians for hepatoma secondary to hepatitis C at the University of Tennessee Bowld Hospital located in Memphis, Tennessee. (Aff. of Michael Dragutsky, M.D. ("Dragutsky Aff.") at 2, D.E. # 60–3; Aff. of Phillip Zeni, M.D. ("Zeni Aff") at 2, D.E. # 60–4.) Mr. Bock received this treatment from September 22, 2003 until his death on October 15, 2003. (Dragutsky Aff. at 2; Zeni Aff at 2.) Dr. Zeni describes Mr. Bock's treatment as follows:

> [Mr. Bock] underwent a chemo-embolization on September 23, 2003. The following day, Mr. Bock underwent a radiofrequency ablation procedure. This procedure was complicated by a drop in blood pressure due to bleeding at the hepatic puncture site. Mr. Bock was resuscitated in the operating room with placement of a cardiac central line, but his blood pressure continued to drop. An anteriogram was performed which revealed active bleeding at a branch of the right hepatic artery from a non embolized tumor at the right upper pole of the liver. This bleeding was stopped by

embolization[,] and he was given four units of blood and two units of plasma. The patient was stabilized and transferred to the intensive care unit.

(Zeni Aff. at 2.) Dr. Dragutsky's relates Mr. Bock's treatment in the same terms. (Dragutsky Aff at 2.) Mr. Bock continued to suffer from post-operative bleeding and died of hypoxia on October 15, 2003. (*Id.* at 2–3).

Drs. Dragutski and Zeni agree Mr. Bock received treatment in conformity with the standard of care as it existed in Memphis, Tennessee in 2003. (*Id.* at 2–3; Zeni Aff. at 2.) Plaintiff disputes that Mr. Bock's treatment was in conformity with the applicable standard of care, and adduces the affidavit and deposition of James Shull, M.D. ("Dr. Shull") in support. (Pls. Resp. to Mot. for Summ. Judg. at 2.) There appears to be no other dispute as to UTMG's provision of medical services to Mr. Bock. (January 15, 2010 Aff. of James Shull, M.D. ("Jan. 15 Shull Aff.") ¶ 22, D.E. # 77–1) Dr. Shull opines that the provision of chemo-embolization by UTMG breached the applicable standard of care; that the manner in which UTMG performed the chemo-embolization breached the applicable standard of care; and that UTMG's subsequent treatment breached the applicable standard of care. (December 12, 2006 Affidavit of Dr. James Shull (Dec. 12 Shull Aff.) ¶ 8, D.E. # 77–1.)

UTMG moved the Court for summary judgment on December 1, 2009, arguing Dr. Shull was not qualified to give expert witness testimony under Tenn. Code Ann. § 29–16–115(b). United States District Judge Bernice B. Donald, relying in part on a decision of the Tennessee Court of Appeals holding that § 29–16–115(a)(1) required a testifying physician's knowledge of an applicable standard of care be obtained through personal, firsthand knowledge, granted UTMG's motion for summary judgment. (Mem. Op. at 12, D.E. # 117, citing *Eckler v. Allen,* 231 S.W.3d 379, 386–87 (Tenn.Ct.App.2006)). Plaintiff appealed this grant of summary judgment to the Sixth Circuit Court of Appeals. (Notice of Appeal, D.E. # 120, 122.) During the pendency of the appeal, the Tennessee Supreme Court rejected the approach endorsed in *Eckler v. Allen,* holding that a physician's knowledge of an applicable standard of care need not be through personal, firsthand experience. *Shipley v. Williams,* 350 S.W.3d 527, 548–51 (Tenn.2011). The Sixth Circuit remanded the case to determine whether, after *Shipley,* Dr. Shull was qualified under § 29–16–115(b) to give expert witness testimony as to three questions: "(1) were the decisions to perform the chemo-embolization and radiofrequency ablation made in accordance with the appropriate standard of care?; (2) were the procedures performed in accordance with the appropriate standard of care?; and (3) was [Mr.] Bock's treatment after the procedure performed in accordance with the appropriate standard of care?" (6th Cir. Op. at 8, D.E. # 123.)

UTMG renewed their motion for summary judgment on June 29, 2012. (D.E. # 134.) The Court referred this motion to the magistrate judge for issuance of a report and recommendations on August 2, 2012. (D.E. # 141.) The magistrate judge issued a report and recommendations on November 8, 2012, recommending the Court find Dr. Shull's testimony barred and grant summary judgment to UTMG. (D.E. # 154.) Plaintiff filed objections to the report and recommendations on November 27, 2012, arguing the magistrate judge erred by not considering Dr. Shull's affidavit testimony and by applying the incorrect legal standard to Dr. Shull's qualifications. (D.E. # 156.)

## STANDARD OF REVIEW

A district court may refer a dispositive motion to a magistrate judge for issuance

of a report and recommendation.[1]  Either party may object to the magistrate judge's report and recommendation within 14 days of service of the proposed findings and recommendations.[2]  A district court reviews the properly-objected-to portions of a magistrate judge's report and recommendation on these matters *de novo*.[3]  However, the district judge is not obligated to review any portions of the magistrate judge's report and recommendations to which neither party has filed a proper objection.[4]

A party is entitled to summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[5]  In reviewing a motion for summary judgment, the court "may not make credibility determinations or weigh the evidence[,]"[6] but instead must view the evidence in the light most favorable to the nonmoving party.[7]  When the movant supports their motion with documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial."[8]  It is not sufficient for the nonmoving party "simply [to] show that there is some metaphysical doubt as to the material facts."[9]  These facts must constitute more than a scintilla of evidence, and must rise to the level that a reasonable juror could find by a preponderance of the evidence the nonmoving party is entitled to a verdict.[10]  To determine whether it should grant summary judgment, the court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."[11]

A court must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial."[12]  The Sixth Circuit interprets this to mean that "the nonmoving party … 'put up or shut up' [on] the critical issues of his asserted causes of action."[13]

### ANALYSIS

A federal court sitting in diversity must apply the substantive law of the state in which it sits,[14] but will apply federal proce-

1.  Fed.R.Civ.P. 72(b).

2.  Fed.R.Civ.P. 72(b)(2).

3.  Fed.R.Civ.P. 72(b)(3).

4.  *Smith v. Detroit Fed. of Teachers*, 829 F.2d 1370, 1374 (6th Cir.1987).

5.  Fed.R.Civ.P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Canderm Pharmacal, Ltd. v. Elder Pharms., Inc.*, 862 F.2d 597, 601 (6th Cir.1988).

6.  *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir.1994).

7.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

8.  *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548.

9.  *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348.

10.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

11.  *Id.* at 251–52, 106 S.Ct. 2505.

12.  *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

13.  *Lord v. Saratoga Capital, Inc.*, 920 F.Supp. 840, 847 (W.D.Tenn.1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir.1989)).

14.  28 U.S.C. § 1652; *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

dural rules.[15] The Supreme Court has never directly addressed the interaction of *Erie* doctrine with the Federal Rules of Evidence. Specifically, the Court has never addressed the seeming tension between Federal Rules of Evidence 601 and 702. Federal Rule of Evidence 601 states "in a civil case, state law governs the witness's competency regarding a claim or defense for which state law supplies the rule of decision." [16] Federal Rule of Evidence 702, however, deals with a witness' qualification to give expert witness testimony rather than his competency.[17] The Sixth Circuit uses a two-step inquiry to resolve this seeming tension in cases involving Tenn. Code Ann. § 29–26–115(b): first, the court looks to witness competency under § 29–26–115(b), a consideration "intimately intertwined with the substantive law"; second, the court looks to the witness' qualifications under F.R.E. 702.[18]

In *Shipley*, the Tennessee Supreme Court held "when determining whether a witness is competent to testify, the trial court should look to subsection (b), not subsection (a) [of § 19–16–115]." [19]

Tennessee Code Annotated § 29–26–115(b) provides in relevant part

> (b) No person in a health care profession requiring licensure under the laws of this state shall be competent to testify in any court of law to establish the facts required to be established by subsection (a), unless the person was licensed to practice in the state or a contiguous bordering state a profession or specialty

which would make the person's expert testimony relevant to the issues in the case and had practiced this profession in one (1) of these states during the year preceding the date that the alleged injury or wrongful act occurred.[20]

In the words of the *Shipley* court, subsection (b) sets forth three requirements.

> The witness must be (1) "licensed to practice in the state or a contiguous bordering state," (2) "a profession or specialty which would make the person's expert testimony relevant to the issues in the case," and (3) must have "had practiced this profession or specialty in one ... of these states during the year preceding the date that the alleged injury or wrongful act occurred." [21]

Ordinarily, unless the alleged misconduct is so egregious and obvious as to be within the knowledge of an average layperson, a plaintiff must produce expert testimony to sustain allegations of malpractice.[22]

At issue in the instant motion is Dr. Shull's competency under § 29–26–115(b) to testify to the matters that Mrs. Bock must prove at trial under § 29–26–115(a). In particular, UTMG argues that Dr. Shull is not competent to testify as to "[t]he recognized standard of professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which the defendant practices or in a similar community at the time the alleged injury or wrongful action occurred[.]" [23]

---

**15.** *Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965).

**16.** F.R.E. 601.

**17.** F.R.E. 702.

**18.** *Legg v. Chopra,* 286 F.3d 286, 291–92 (6th Cir.2002).

**19.** *Shipley v. Williams,* 350 S.W.3d 527, 550 (Tenn.2011).

**20.** Tenn. Code Ann. § 29–26–115(b).

**21.** *Shipley,* 350 S.W.3d at 550.

**22.** *Bowman v. Henard,* 547 S.W.2d 527, 530–31 (Tenn.1977).

**23.** Tenn. Code Ann. § 29–26–115(a)(1).

The parties do not dispute that Dr. Shull held a license to practice medicine in Tennessee for the relevant time period, so for all three questions, Dr. Shull passes the first inquiry under subsection (b). The parties' arguments instead go to the second and third inquiry under subsection (b): whether Dr. Shull practiced a profession or specialty in Tennessee or a bordering state within the year preceding UTMG's alleged wrongful acts that would make his testimony relevant. There is "no requirement that the witness practice the same specialty as the defendant,"[24] but "the witness must demonstrate sufficient familiarity with the standard of care and the testimony must be probative of the issue involved."[25] As noted above, the Tennessee Supreme Court recently held that the knowledge of the applicable standard of care in the community need not come from first-hand knowledge.[26] However, *Shipley* did not disturb the statutory requirement the proffered witness must have practiced a profession or specialty that makes their testimony relevant, and "[c]ourts must look carefully at the particular issues presented in the case to determine if an expert practices a profession or specialty that would make the expert's testimony relevant to those issues."[27]

Dr. Shull is a former surgical oncologist who currently practices as a general practitioner in Memphis.[28] He grad-uated from Northwestern University Medical School in 1974.[29] Dr. Shull completed a surgical internship, a surgical residency, and a fellowship in surgical oncology.[30] Since then, Dr. Shull held various positions: Clinical Associate at the National Cancer Institute from 1979–1980; Senior Investigator (Surgery Branch) at the National Cancer Institute from 1981 to 1982; Assistant Professor of Surgery at the University of Southern California in 1984; Chief of Surgery at Eastwood Medical Center from 1992 to 1994; Attending Staff Physician at Saint Francis Hospital from 1986 to 1995; and Consulting Physician at Saint Francis Hospital from 1995 to 2006.[31] Dr. Shull began transitioning his practice from surgery in 1998, and has been a general practitioner since.[32] Dr. Shull has performed only minor office surgeries since 1998.[33] Dr. Shull has only treated liver cancer once.[34]

The Court finds that, with respect to the questions of whether chemo-embolization or radiofrequency ablation were appropriate in Mr. Bock's case or whether UTMG breached the appropriate standard of care in how UTMG performed those procedures, Dr. Shull was not competent to testify under § 29–26–115. As noted above, § 29–26–115(b) requires that a proffered expert witness have practiced a profession or specialty in Tennessee or a bor-

---

24. *Searle v. Bryant*, 713 S.W.2d 62, 65 (Tenn. 1986).

25. *Cardwell v. Bechtol*, 724 S.W.2d 739, 751 (Tenn.1987).

26. *Shipley*, 350 S.W.3d 527, 548–51 (Tenn. 2011).

27. *Shipley*, 350 S.W.3d 527, 556 (Tenn.2011).

28. Shull Dep. 9:21–23, 10:2–12, 58:14–22.

29. Jan. 15 Shull Aff. ¶ 1.

30. *Id.* ¶ 4.

31. *Id.* ¶¶ 6, 10, 13.

32. Shull Dep. 11:14–19; Jan. 15 Shull Aff. ¶ 17.

33. Shull Dep. 12:1–15. There is some confusion in the record as to when Dr. Shull performed his last hospital surgery. Dr. Shull indicates he is himself not sure of whether he performed his last hospital surgery in 1998 or 1999. Since neither date is within one year of UTMG's alleged wrongful acts, the distinction is immaterial for present purposes.

34. *Id.* 76:19–21.

dering state within the year preceding the alleged wrongful acts that would make his testimony relevant. Dr. Shull is a general practitioner who has not performed surgery in a hospital setting for any condition, much less liver cancer, since 1998 or 1999. Although Dr. Shull states he has remained current with his continuing education requirements and subscribes to two national journals, that he was a Consulting Staff Physician at St. Francis, and that he has regularly reviewed the records of patients receiving hospital care in 2002 and 2003,[35] he gives no indication as to why these assertions qualify him under § 29–26–115(b) as someone who has practiced a relevant profession or specialty in 2002 or 2003. While, theoretically, these assertions go to whether Dr. Shull kept himself informed about the relevant standard of care, they do not indicate that he was engaged in the practice of a profession or specialty within the year preceding UTMG's alleged wrongful acts.

In contrast, Dr. Shull admits he has only treated a patient with liver cancer once in his career and that was before 1999.[36] Dr. Shull further admits he has never performed a chemo-embolization or radiofrequency ablation.[37] Dr. Shull has neither referred anyone to have these procedures performed by another physician nor recommended these procedures.[38] It seems clear to the Court that Dr. Shull, in 2002 and 2003, was not practicing a profession or specialty that would make his testimony as to the applicable standard of care in recommending or performing a chemo-embolization or a radiofrequency ablation relevant.

Mrs. Bock makes much of the evidence in Dr. Shull's sworn affidavits regarding his familiarity with the applicable standard of care through his prior practice and his continued research and education, stating that these constitute the practice of a relevant profession or specialty in 2002 and 2003.[39] The Court does not agree that attending seminars, continuing medical education, and independent research constitute the practice of a relevant profession or specialty as envisioned under § 29–26–115(b). Mrs. Bock further asserts, without citation, that § 29–26–115(b) does not require an expert witness to actually practice the profession or specialty in the year preceding the alleged wrongful act so long as he maintains his knowledge of the standard of care.[40] This contention is at odds with the plain language of § 29–26–115(b), and the Court cannot agree. Therefore, the Court finds that Dr. Shull is neither competent to testify as to the relevant standard of care with respect to the decision to perform chemo-embolization or radiofrequency ablation, nor is he competent to testify as to the relevant standard of care with respect to the provision of these two techniques.

■ The remaining question before the Court is whether Dr. Shull is competent to testify as to whether UTMG's post-surgery treatment conformed to the applicable standard of care. Although this is a closer question than the first two presented, the Court finds that he is not. As with the prior two questions, the Court's inquiry turns on whether Dr. Shull practiced a profession or specialty which would make his testimony relevant to the issue of whether UTMG provided the applicable standard of care. Again, Dr. Shull's practice in 2002 and 2003 was a general prac-

---

**35.**  Jan. 15 Shull Aff. ¶ 19.

**36.**  Shull Dep. 76: 19–21.

**37.**  *Id.* 98:10–99:2.

**38.**  *Id.*

**39.**  Pl.'s Obj. to R & R at 6, 7, D.E. # 156.

**40.**  *Id.* at 7.

tice, not a surgical practice. Although Dr. Shull had privileges at St. Francis Hospital, he had not treated a patient in a hospital setting since 1998. Dr. Shull's own words indicate he was engaged in a substantially different type of practice in 2002–2003 than what is at issue here:

> The type of medical care and/or post operative medical care and treatment rendered to Hans Bock, deceased, is no different than the type of medical care that I have provided to patients in Memphis, Shelby County, Tennessee since 1986 *up to 1998 and/or 1999* as a private physician, emergency room physician, surgeon, admitting and/or consulting physician.[41]

The Court finds enough of a distinction between the practice of post-operative care in a hospital setting and a general practice to hold that Dr. Shull was not engaged in the practice of a profession or specialty that would allow him to give testimony relevant to the issue before the Court.

■ Dr. Shull testified that while he is not familiar with the standard of care for the specialties at issue, he is familiar with the standard of care for treatment of intra-abdominal bleeding.[42] "Where an expert is unfamiliar with the practice of another field and with its standard of care," it is inappropriate to admit generalized evidence as to the standard of care.[43] Dr. Shull's testimony thus gives the Court no basis to conclude that his familiarity with the general standard of care for treatment of intra-abdominal bleeding from his general practice and research makes his general practice one that would make his testimony as to the standard of post-operative care relevant. The Court notes Dr. Shull's testimony of continuing medical education, subscriptions to medical journals, his privileges as Consulting Staff Physician at St. Francis, and his review of medical charts of hospitalized patients.[44] The Court again finds these activities do not constitute the practice of a profession or specialty that would make Dr. Shull's testimony relevant to the issue of whether UTMG met the standard of care due a post-operative patient. Independent research and review of patient files no more constitutes the practice of medicine than reading casebooks and reviewing case files constitutes the practice of law.

To be clear, the Court does not base its reasoning on the now-rejected rule of *Eckler*. In *Eckler*, the Tennessee Court of Appeals held that a testifying physician's knowledge of the applicable standard of care in a community must come from personal, firsthand knowledge.[45] The *Shipley* court held that, instead, a physician testifying as to the relevant standard of care in a community may "educate himself . . . on the characteristics of a medical community in order to provide competent testimony in a variety of ways[.]"[46] This holding addresses a different question than whether, under subsection (b), a proffered witness has practiced a profession or specialty in Tennessee or a bordering state within the preceding year. The Court notes Mrs.

**41.** Jan. 15 Shull Dep. ¶ 16.

**42.** Shull Dep. 57:19–58:3.

**43.** *Cardwell v. Bechtol,* 724 S.W.2d 739, 755 (Tenn.1987) (holding where proffered witness only offered general standard of care in obtaining informed consent but was unfamiliar with the specific treatment provided, generalized evidence is contrary to the terms and policy of § 29–26–115. The Court notes this case is pre-*Shipley.* However, the *Cardwell* court does not discuss the locality rule at issue in *Shipley.*

**44.** Jan. 15 Shull Aff. ¶ 19–20.

**45.** *Eckler v. Allen,* 231 S.W.3d 379, 385 (Tenn. Ct.App.2006).

**46.** *Shipley v. Williams,* 350 S.W.3d 527, 552–53 (Tenn.2011).

Bock's Objections to the Report and Recommendations cites extensively to portions of Dr. Shull's deposition testimony and affidavits indicating the lengths to which Dr. Shull went to stay current with his medical knowledge.[47] However, the Court finds Dr. Shull's attempts to stay current as to the standard of care in post-surgical situations do not constitute the practice of a profession or specialty which would make his testimony relevant. Therefore, the Court holds that Dr. Shull is not competent to testify as to the appropriate standard of care for post-surgical care.

Mrs. Bock also cites to several cases where Tennessee courts found a proffered witness practicing a different specialty than that of the defendant competent. The Court begins by stating it does not base its holding on the mere fact Dr. Shull practiced a different specialty than those at issue here from 2002–2003. Rather, the Court holds that Dr. Shull's practice insufficiently connected to the issues before the court to make his testimony relevant for the purposes of § 29–26–115(b). Even so, the Court finds each case Mrs. Bock cites distinguishable from the present matter. In *Searle v. Bryant*, the Tennessee Supreme Court held an infectious disease specialist and clinical microbiologist competent to testify as to the care of a surgical wound infection.[48] However, care and treatment of an infection logically and directly relates to the practice of clinical microbiology and treatment of infectious diseases, making the testimony of a witness who practices in those fields relevant.

In *Stokes v. Leung*, the Tennessee Court of Appeals of Tennessee found a psychiatrist called as an expert witness against a cardiologist and internal medicine specialist doctor competent.[49] The issue in *Stokes* was the appropriate standard of care for a patient *with psychiatric problems*, and the issue before the court went directly to how the defendants dealt with the patient's psychiatric problems[50]— clearly something to which the practice of psychiatry would be relevant. In *Coyle v. Prieto*, the Tennessee Court of Appeals held that an internist was competent to testify as to the applicable standard of care of a pathologist examining a patient biopsy for cancer.[51] In *Coyle*, the proffered witness testified that his practice involved the workup and diagnosis of cancerous lung biopsies, showing that he practiced a specialty within the year prior to the alleged misconduct that would make his testimony relevant.[52] Finally, in *Bravo v. Sumner Reg. Health Sys.*, the Tennessee Court of Appeals held a gynecologist competent to testify as to the appropriate standard of care in obstetrics.[53] In a "very close issue," the Court of Appeals gave weight to several factors, including that the gynecologist maintained board certification in obstetrics and that he taught obstetrics at Emory University.[54] In contrast to the foregoing cases, Dr. Shull's practice of general medicine does not appear to be directly relevant to the issues before the Court in this case. He does not regularly see surgical patients. He does not regularly recommend the type of surgery per-

47. See Pl.'s Obj. to R & R at 4–5, 6, 7, 11, 13, 14, 15, 16, 17.

48. *Searle v. Bryant*, 713 S.W.2d 62, 65 (Tenn. 1986).

49. *Stokes v. Leung*, 651 S.W.2d 704, 706 (Tenn.Ct.App.1982).

50. *Id.* at 708.

51. *Coyle v. Prieto*, 822 S.W.2d 596, 600 (Tenn. Ct.App.1991).

52. *Id.* at 598.

53. *Bravo v. Sumner Reg. Health Sys.*, 148 S.W.3d 357, 367 (Tenn.Ct.App.2003).

54. *Id.*

formed in this case. He does not regularly care for post-operative patients in a hospital setting. Dr. Shull neither maintains board certification in surgery, stating in his deposition that he was unable to learn current surgical techniques,[55] nor does he instruct on surgical techniques.

Because the Court finds that under Tennessee law Dr. Shull is not competent to testify as to the standard of care due to Mr. Bock by UTMG in the decision to use chemo-embolization or radiofrequency ablation, the standard of care due to Mr. Bock by UTMG in the execution of these techniques, or UTMG's provision of post-operative care, the Court finds it unnecessary to perform the second step of analysis under *Legg*. As a result of Dr. Shull's disqualification, the Court, finding that Mrs. Bock is unable to support an element of her prima facie case on which she bears the burden of proof, holds that Defendant's Motion for Summary Judgment is well-taken, and **GRANTS** summary judgment in Defendant's favor.

### CONCLUSION

Because Dr. Shull did not practice a profession or specialty within the year preceding the alleged wrongful acts leading to Mr. Bock's death that would make Dr. Shull's testimony relevant, the Court holds that he is not qualified as an expert witness under Tenn. Code Ann. § 29–26–115(b). Since Dr. Shull is the sole witness adduced by Mrs. Bock to prove an essential element of her claim on which she bears the burden of proof under Tenn. Code Ann. § 29–26–115(a), the Court finds that summary judgment is appropriate, and hereby **GRANTS** Defendant's Motion for Summary Judgment.

### IT IS SO ORDERED.

---

**55.** Shull Dep. 24:6–25.

### REPORT AND RECOMMENDATION ON UT MEDICAL GROUP, INC.'S MOTION FOR SUMMARY JUDGMENT

CHARMIANE G. CLAXTON, United States Magistrate Judge.

Before the Court is Defendant UT Medical Group, Inc.'s ("UTMG") Motion for Summary Judgment. (Docket Entry "D.E." # 134). The instant motion was referred to the Magistrate Judge for Report and Recommendation. (D.E. # 141). For the reasons set forth herein, the Magistrate Judge recommends that UTMG's Motion for Summary Judgment be GRANTED.

### I. Introduction

The instant case arises from allegations of medical malpractice against UTMG on behalf of decedent Hans Bock ("Mr. Bock") by his surviving spouse, Isle Bock ("Mrs. Bock"). Mr. Bock was a seventy-three year old patient diagnosed with hepatoma secondary to Hepatitis C and received treatment from UTMG physicians at the University of Tennessee Bowld Hospital in Memphis, Tennessee from September 22, 2003 until his death on October 15, 2003. Mr. Bock's course of treatment was summarized as follows:

> [Mr. Bock] underwent a chemo-embolization on September 23, 2003. The following day, Mr. Bock underwent a radiofrequency ablation procedure. This procedure was complicated by a drop in blood pressure due to bleeding at the hepatic puncture site. Mr. Bock was resuscitated in the operating room with placement of a cardiac central line, but his blood pressure continued to drop. An anteriogram was performed which revealed active bleeding at a branch of the right hepatic artery from a non em-

bolized tumor at the right upper pole of the liver. This bleeding was stopped by emoblization[,] and he was given four units of blood and two units of plasma. The patient was stabilized and transferred to the intensive care unit.

(March 29, 2010 Memorandum Opinion "Memorandum Opinion" at 2; March 26, 2012 Appeal Order at 2). Mr. Bock continued to suffer from post-surgical internal bleeding and succumbed to hypoxia on October 15, 2003. (Memorandum Opinion at 2; Appeal Order at 2).

Plaintiff initially filed suit alleging negligence, medical malpractice, and wrongful death against UTMG, Dr. Rene Davila, Dr. Abbas Chamsudin, Shelby County Healthcare Corporation, the Regional Medical Center, Tabitha Young Bailey, and others, in the Circuit Court for Shelby County, Tennessee. Almost three years later, Plaintiff non-suited her case against the two remaining Defendants, Dr. Rene Davila and UTMG. On September 30, 2008, Plaintiff filed her case in this Court against UTMG only, alleging that the actions of Mr. Bock's treating physicians are imputable to UTMG under the theory of respondeat superior.

UTMG moved for summary judgment on December 1, 2009 and argued that Plaintiff's sole expert, Dr. James H. Shull, M.D. ("Dr. Shull"), a former surgical oncologist who has been practicing as a general practitioner since 1998 or 1999 in Memphis, Tennessee, was not competent to testify as an expert witness. (D.E. # 60). On February 26, 2010, United States District Judge Bernice B. Donald concluded that Dr. Shull did not meet the criteria set forth under Tennessee Code Annotated Section 29–26–115(b) to testify as an expert witness in this case. Accordingly, Judge Donald granted UTMG's Motion for Summary Judgment and dismissed Plaintiff's case. (D.E. # 109). In a subsequent Memorandum Opinion on UTMG's

Motion for Summary Judgment (D.E. # 117), Judge Donald set forth her reasoning for concluding that Dr. Shull was not competent to testify.

In her Memorandum Opinion, Judge Donald reasoned that Dr. Shull had been proffered to testify that "UTMG's physicians breached the standard of care first in deciding to perform chemo-embolization and radiofrequency ablation and then, after having performed these procedures, in failing to diagnose and respond to Mr. Bock's continued internal bleeding." (Mem. Op. at 3). With respect to whether Dr. Shull was competent to testify regarding the decision to perform chemo-embolization and radiofrequency ablation, Judge Donald relied on the facts that Dr. Shull has never performed either procedure, has never recommended or referred anyone to have these procedures performed, has never monitored a patient who is recovering from either procedure, and has only treated liver cancer once during his career. (Mem. Op. at 8–10). Thus, Judge Donald concluded that Dr. Shull had a "complete lack of experience with the two procedures in question" and was "clearly not competent to testify regarding whether it was appropriate to perform chemo-embolization and radiofrequency ablation; whether Mr. Bock's physicians complied with the standard of care in executing these procedures; or whether Mr. Bock received appropriate post-procedure care immediately afterwards." (Mem. Op. at 10).

With respect to whether Dr. Shull was qualified to testify as to the care Mr. Bock received in the days following the procedure—namely, whether Mr. Bock's treating physicians failed to diagnose and adequately respond to his intra-abdominal bleeding—Judge Donald concluded as follows: "Dr. Shull's qualifications to give testimony on this aspect of Plaintiff's claim are arguably not as weak because, as a

surgeon who treated patients in hospitals prior to 1998, Dr. Shull has likely acquired knowledge and experience in identifying and treating post-operative internal bleeding." (Mem. Op. at 11). However, Judge Donald found that the care at issue in this case "occurred approximately five years after Dr. Shull last treated a patient in a hospital setting." (*Id.*) Further, Judge Donald reasoned that, "[e]ven beyond this temporal issue, Dr. Shull's opinion plainly relies upon a standard of care applicable to all medical providers rather than a standard of care applicable to a relevant specialty in the Memphis community." (*Id.*) Judge Donald concluded that Tennessee law is "unambiguous in holding that testimony as to a general standard of care across specialties does not establish the standard of care in a medical malpractice action." (*Id.*) Judge Donald determined that, "[n]ever having treated a patient following chemo-embolization and/or radiofrequency ablation, Dr. Shull lacks any firsthand knowledge of what the standard of care required post-procedure as to diagnosing or treating internal bleeding." (*Id.*)

Judge Donald's considered Plaintiff's contention that Dr. Shull has "conducted research, including internet research, to fill the gaps in his knowledge caused by no longer practicing in the area of surgical oncology" but found this argument also to be "unavailing for Plaintiff." (*Id.* at 12). Judge Donald determined that Dr. Shull's "reliance on the internet and other secondary sources very strongly suggests that Dr. Shull is applying a national rather than local standard of care, which is impermissible." (*Id.*) Judge Donald concluded that, "more importantly," "Tennessee law requires that a proffered expert's knowledge of the standard of care in a profession or specialty be obtained through personal, firsthand experience in the community or a similar community." (*Id.*) Relying upon *Eckler v. Allen,* 231 S.W.3d 379, 386–87

(Tenn.Ct.App.2006), Judge Donald held that Tennessee Code Annotated Section 29–26–115(a)(1) requires that "knowledge of the applicable standard of care must be either firsthand knowledge of the standard of care by one who practices in the community in which the defendant practices, or firsthand knowledge by one who practices in a community demonstrated to be similar to that of the defendant." *Id.* Ultimately, Judge Donald concluded that "[r]ecourse to secondary sources decoupled from practical application does not satisfy the requirement that knowledge of the standard of care be based upon personal experience." (Mem. Op. at 12). Accordingly, Judge Donald determined that Dr. Shull was not competent to testify as to the standard of care in the instant case and that summary judgment in favor of UTMG was appropriate. (*Id.*)

Plaintiff appealed Judge Donald's grant of summary judgment to the United States Court of Appeals for the Sixth Circuit on April 28, 2010. On August 11, 2011, the Tennessee Supreme Court issued an opinion in *Shipley v. Williams,* 350 S.W.3d 527 (Tenn.2011), which rejected the Tennessee Court of Appeal's ruling in *Eckler* and held that, under the locality rule in Tennessee Code Annotated Section 29–26–115(b), a proffered medical expert is not required to demonstrate firsthand and direct knowledge of a medical community and the appropriate standard of medical care there in order to be competent to testify in a medical malpractice case.

Upon consideration of the appeal post-*Shipley,* the Sixth Circuit determined that there were two questions with respect to whether Dr. Shull should be permitted to testify in the instant case. *See Legg v. Chopra,* 286 F.3d 286, 291–92 (6th Cir. 2002). First, a court must determine whether Dr. Shull is competent to testify under Rule 601 of the Federal Rules of

Evidence and state substantive law. Next, a court must consider whether the witness is qualified to testify under Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Beginning with witness competency, the Sixth Circuit concluded that the record does not permit a resolution of this question "[i]n light of the changed landscape in Tennessee law" after the *Shipley* ruling. (Appeal Order at 2). The Sixth Circuit found that "it is somewhat unclear whether the district court's application of *Eckler* was only in the context of Tennessee's locality rule—the rationale rejected in *Shipley*—or more broadly focused on Dr. Shull's competency, without regard to the locality—a position that arguably is still good law, even after *Shipley.*" (Appeal Order at 7–8).

Ultimately, the Sixth Circuit remanded the instant case to this Court to determine whether, under Tennessee Code Annotated Section 29–26–115, as construed in *Shipley,* Dr. Shull is competent to testify about three questions at issue: (1) were the decisions to perform the chemo-embolization and radiofrequency ablation made in accordance with the appropriate standard of care?; (2) were the procedures performed in accordance with the appropriate standard of care?; and (3) was Bock's treatment after the procedure performed in accordance with the appropriate standard of care? The Sixth Circuit advised that the "answer may be yes to some questions, and no to others." The Sixth Circuit further instructed that, if Dr. Shull is found to be competent to testify under Rule 601, this Court should proceed to address whether he is also qualified to testify under Rule 702.

## II. Legal Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). Although hearsay evidence may not be considered on a motion for summary judgment, *Jacklyn v. Schering–Plough Healthcare Prods. Sales Corp.,* 176 F.3d 921, 927 (6th Cir.1999), evidentiary materials presented to avoid summary judgment otherwise need not be in a form that would be admissible at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Thaddeus–X v. Blatter,* 175 F.3d 378, 400 (6th Cir.1999). The evidence and justifiable inferences based on facts must be viewed in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Wade v. Knoxville Utilities Bd.,* 259 F.3d 452, 460 (6th Cir.2001).

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. The moving party can prove the absence of a genuine issue of material fact by showing that there is a lack of evidence to support the nonmoving party's case. *Id.* at 325, 106 S.Ct. 2548. This may be accomplished by submitting affirmative evidence negating an essential element of the nonmoving party's claim, or by attacking the nonmoving party's evidence to show why it does not support a judgment for the nonmoving party. 10a Charles A. Wright et al., *Federal Practice and Procedure* § 2727 (2d ed. 1998). "Conclusory statements unadorned with specific facts are insufficient to establish a factual dispute that will defeat summary judgment." *Alexander v. CareSource,* 576 F.3d 551, 560 (6th Cir.2009).

Once a properly supported motion for summary judgment has been made, the "adverse party may not rest upon the mere allegations or denials of [its] pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, 106 S.Ct. 1348.

### III. Proposed Conclusions of Law

In accordance with the Sixth Circuit's instructions, the Court will begin with the competency of Dr. Shull under Rule 601 and state substantive law and address the three proffered areas of Dr. Shull's testimony. Tennessee Code Annotated Section 29–26–115 sets forth the required elements of proof for a medical malpractice claim in subsection (a) and the requirements for competency of a proffered medical expert in subsection (b), as follows:

(a) In a malpractice action, the claimant shall have the burden of proving by evidence as provided by subsection (b):
(1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which the defendant practices or in a similar community at the time the alleged injury or wrongful action occurred;
(2) That the defendant acted with less than or failed to act with reasonable care in accordance with such standard; and
(3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.

(b) No person in a health care profession requiring licensure under the laws of this state shall be competent to testify in any court of law to establish the facts required to be established by subsection (a), unless the person was licensed to practice in the state or a contiguous bordering state of a profession or specialty in one (1) of these states during the year preceding the date that the alleged injury or wrongful act occurred. This rule shall apply to expert witnesses testifying for the defendant as rebuttal witnesses. The court may waive this subsection (b) when it determines that the appropriate witnesses otherwise would not be available.

Tenn. Code Ann. § 29–26–115.

■ The first requirement that a proffered expert practice in the community of the defendant medical provider or a similar community is known as the locality rule, and this was the requirement at issue in *Eckler* and *Shipley*. *Shipley*, 350 S.W.3d at 532. The second requirement is that the proffered expert practice a relevant profession or specialty in the year preceding the date of the alleged malpractice. An expert witness need not practice in the specialty at issue in the case to be qualified to render an opinion as to the specialty's standard of care. *Searle v. Bryant*, 713 S.W.2d 62, 65 (Tenn.1986). However, the expert witness "must be sufficiently familiar with the standard of care of the speciality and be able to give relevant testimony on that subject." *Goodman v. Phythyon*, 803 S.W.2d 697, 702 (Tenn.Ct.App.1990). When the proffered expert does not practice in the specialty at issue, the witness must demonstrate familiarity with the field of practice and the standards that govern it. *Bravo v. Sum-*

*ner Reg'l Health Sys.*, 148 S.W.3d 357, 367 (Tenn.Ct.App.2003).

As an initial point, the parties do not dispute that the locality rule is not at issue in the instant case. Dr. Shull is a Memphis, Tennessee physician who has practiced in Memphis, Tennessee from 1986 until the present. Instead, the dispute is whether Dr. Shull, who transitioned from performing surgeries around 1998 to 1999 into general practice, meets the requirement that he practiced a relevant profession or specialty within one year of the date of the alleged malpractice in 2003.

With respect to whether Dr. Shull is competent to testify as to the first two questions set forth by the Sixth Circuit— namely, whether decisions to perform the chemo-embolization were made in accordance with the appropriate standard of care and whether the procedures were performed in accordance with the appropriate standard of care—the District Court's March 29, 2010 Memorandum Opinion did not rely upon *Eckler* or its personal, first-hand or direct knowledge requirement in the determination that he was not qualified to testify as to these issues. Instead, the Memorandum Opinion relied upon Dr. Shull's "complete lack of experience with the two procedures in question" to determine that he would not have relevant testimony on those subjects. A review of Dr. Shull's proffered testimony supports the conclusion that Dr. Shull does not have any experience with the decision to perform or the performance of these procedures. (Shull Dep. at 98–99). Thus, the Court does not find a reason post-*Shipley* to recommend that the District Court's conclusions in the Memorandum Opinion be altered on remand. As such, the Magistrate Judge recommends that Dr. Shull is not competent to testify on the aforementioned issues.

With respect to the question of whether Mr. Bock's treatment after the procedure was performed in accordance with the appropriate standard of care, the District Court did rely upon *Eckler* and its personal, first-hand or direct knowledge requirement in the determination that Dr. Shull was not qualified to testify as to these issues. Accordingly, this issue appears to warrant further consideration post-*Shipley* on remand.

Upon review, it is important to note at the outset that the Memorandum Opinion relied upon *Eckler*'s personal, first-hand or direct knowledge requirement only as one of its bases for the determination that Dr. Shull could not testify on the standard of care for the post-procedure treatment; the Sixth Circuit recognized that this and noted that the District Court relied only on *Eckler* "in part." (Appeal Order at 7). In addition to its analysis under *Eckler*, the District Court's Memorandum Opinion articulated several reasons that Dr. Shull was not competent to testify on the issue of post-procedure care. First, the District Court found that, while Dr. Shull had previously practiced surgery prior to 1998 or 1999, Dr. Shull had not treated a patient in a hospital setting since that time. (Mem. Op. at 11). Thus, nearly five years had elapsed from Dr. Shull's practice of surgery until Mr. Bock's treatment at issue in this case. (*Id.*) For this reason, the District Court found that Dr. Shull had not demonstrated that he was engaged in the practice of a relevant profession or specialty within one year of the alleged medical malpractice as required by Tennessee Code Annotated Section 29–26–115(b). (*Id.*)

Next, the District Court found that Dr. Shull was not competent to testify as to whether Mr. Bock's post-procedure treatment was in accordance with the appropriate standard of care because his "opinion plainly relies upon a standard of care applicable to all medical providers rather

than a standard of care applicable to a relevant specialty in the Memphis community." (*Id.*) Specifically, the District Court relied upon Dr. Shull's deposition testimony that he is not familiar with the standard of care of the specialties at issue in this case—namely hepatology, gastroenterology, or interventional radiology—but instead was familiar "with the standard of care of intra-abdominal bleeding and the complications of their interventional radiology and the failure to diagnose inter-abdominal bleeding." (Shull Dep. at 57–58). The District Court also relied upon Dr. Shull's internet research to "fill the gaps in his knowledge caused by no longer practicing in the area of surgical oncology" and found that his "reliance on the internet and other secondary sources very strongly suggests that Dr. Shull is applying a national rather than a local standard of care...." (Mem. Op. at 12; Shull Dep. at 19, 21). The District Court concluded that "Tennessee law is unambiguous in holding that testimony as to a general standard of care across specialties does not establish the standard of care in a medical malpractice action." (*Id.*) (citing *Herb A. Harris v. Pradumna S. Jain,* No. E2008–01506–COA–R3–CV, 2009 WL 2734083, at *7 (Tenn.Ct.App. Aug. 31, 2009)).

The *Shipley* court expressly stated that it did not alter this rule and did "not adopt a national standard of care in medical malpractice cases." 350 S.W.3d at 553. The *Shipley* court did delve further into the nuances of the local versus national standard of care, opining that "in many instances the national standard is representative of the local standard." *Id.* (citing *Robinson v. LeCorps,* 83 S.W.3d 718, 724 (Tenn.2002)). The *Shipley* court advised that "expert medical testimony regarding a broader regional standard or a national standard should not be barred, but should be considered as an element of the expert witness' knowledge of the standard of care in the same or similar community." 350 S.W.3d at 553. Yet, the *Shipley* court required familiarity with the local standard of care before testifying to a national standard, stating as follows: "Only after a medical expert witness has sufficiently established his or her familiarity with the standard of care in the same or similar community as the defendant, may the witness testify that there is a national standard of medical care to which members of his or her profession and/or specialty must adhere." *Id.* "This testimony, coupled with the expert's explanation of why the national standard applies under the circumstances, is permissible and pertinent to support the expert's opinion on the standard of care." *Id.* "The mere mention of a national standard of care should not disqualify an expert from testifying. However, an expert's testimony may not rely solely on a bare assertion of the existence of an applicable national standard of care...." *Id.*

After reviewing Dr. Shull's deposition testimony on remand in light of *Shipley,* Dr. Shull does not provide information to establish his familiarity with the standard of care in Memphis, Tennessee. Instead, he generally states that he is "familiar with the standard of care of intra-abdominal bleeding and the complications of their interventional radiology and the failure to diagnose intra-abdominal bleeding." (Shull Dep. at 57–58; Mem. Op. at 11). The *Shipley* court explicitly reiterated that a medical expert "may not simply assert their familiarity with a standard of professional care in the defendant's community without indicating the basis for their familiarity." 350 S.W.3d at 541 (quoting *Williams v. Baptist Memorial Hosp.,* 193 S.W.3d 545, 553 (Tenn.2006)). Absent specific evidence of his knowledge of the standard of care in Memphis, Tennessee, the Court recommends that Dr. Shull is not competent to testify as to the standard of care in Memphis, Tennessee on this issue.

Further, as the District Court concluded in the Memorandum Opinion, Dr. Shull's deposition testimony demonstrates that his attempts to refresh his knowledge on the applicable standards of care from the time he ceased practicing as a surgeon consisted entirely of research on national resources. (Shull Dep. at 19, 21, 59, 80). Dr. Shull consulted the National Cancer Institute website and Medscape abstracts to educate himself on the standard of care. (Shull Dep. at 19, 21, 80). There is no indication in the record that these materials had any information that pertained to the standard of care in Memphis, Tennessee or a similar community. Such familiarity is required before a medical expert can rely upon a national standard of care, and it is not present in the instant case.

Additionally, Dr. Shull states that his knowledge of the applicable standard of care for "anything after 1998" was entirely based on his "reading and research" because he "wasn't in the hospital." (Shull Dep. at 59). He also states that his relevant experience giving him familiarity with the applicable standard of care was based upon his practice as a "surgical oncologist," which he ceased practicing in 1998 to 1999. (Shull Dep. at 75). This further goes to demonstrate that he had not been practicing in a relevant profession or specialty for one year before the alleged medical malpractice as required by Tennessee Code Annotated Section 29–26–115(b).

Finally, and of most direct pertinence on remand, the Memorandum Opinion relied upon *Eckler* for the proposition that "Tennessee law requires that a proffered expert's knowledge of the standard of care in a profession or specialty be obtained through personal, first-hand knowledge either in the community or a similar community." (Mem. Op. at 12). It is undoubtedly true that *Shipley* has rejected that requirement under the locality rule as "too restrictive." 350 S.W.3d at 552.

Further, as the Sixth Circuit noted, the Tennessee Court of Appeals has recently "seemed to agree with UTMG's characterization of *Shipley* as limiting the holding to the locality rule," stating as follows: "*Shipley* expressly rejected the requirement that a medical expert have 'personal, firsthand, direct knowledge' of the standard of care *in the defendant's community* in order to offer expert testimony on that standard." (Appeal Order at 7) (citing *Walker v. Garabedian,* No. W2010–02645–COA–R3–CV, 2011 WL 6891575, at *6 (Tenn.Ct.App. Dec. 28, 2011)). Ultimately, the Sixth Circuit instructed this Court to determine "whether the district court's application of *Eckler* was only in the context of Tennessee's locality rule— the rationale rejected in *Shipley*—or more broadly focused on Dr. Shull's competency, without regard to the locality—a position that arguably is still good law, even after *Shipley*." (Appeal Order at 7–8).

As Dr. Shull is a Memphis, Tennessee physician and as Mr. Bock received the treatment giving rise to his medical malpractice claims in Memphis, Tennessee at UTMG's hospital, the Magistrate Judge recommends to the District Court on remand that the Memorandum Opinion did not rely upon *Eckler* in the context of the locality rule. Instead, the Magistrate Judge recommends that the analysis in the Memorandum Opinion more broadly focused on Dr. Shull's competency, without regard to the locality. This position is bolstered by the reasoning in the Memorandum Opinion that Dr. Shull was not competent to testify for the reasons as follows: "Never having treated a patient following chemo-embolization and/or radiofrequency ablation, Dr. Shull lacks any firsthand knowledge of what the standard of care required post-procedure as to diagnosing or treating internal bleeding." (Mem. Op. at 11). Even post-*Shipley*, a proffered medical expert must offer testi-

mony relevant to the issue in the case to be deemed a competent expert. *See, e.g., Goodman v. Phythyon,* 803 S.W.2d 697, 702 (Tenn.Ct.App.1990). Absent such knowledge, Dr. Shull may not be permitted to testify pursuant to Tennessee Code Annotated Section 29–26–115.

Finally, even if this Court were to disregard all of the Memorandum Opinion's references to *Eckler* and Dr. Shull's lack of firsthand knowledge, the Memorandum Opinion had already concluded that Dr. Shull was not competent to testify due to his lack of relevant experience within the year prior to the alleged medical malpractice in this case and his testimony regarding a national rather than local standard of care. Thus, the Magistrate Judge recommends that there is no reason to disturb the Memorandum Opinion's conclusions on remand post-*Shipley.* Thus, the Magistrate Judge recommends that Dr. Shull is not competent to testify on the issue of whether Mr. Bock's post-procedure treatment was in accordance with the appropriate standard of care.[1]

## IV. Conclusion

For the reasons set forth herein, the Magistrate Judge recommends that the District Court on remand conclude that Dr. Shull is not competent to testify as to whether the decisions to perform the chemo-embolization and radiofrequency ablation were made in accordance with the appropriate standard of care, whether the procedures were performed in accordance with the appropriate standard of care, and whether Mr. Bock's treatment after the procedure was performed in accordance with the appropriate standard of care.

---

1. As the Magistrate Judge recommends that Dr. Shull is not competent to testify under Rule 601 of the Federal Rules of Civil Procedure and Tennessee Code Annotated Section 29–26–115(b), and as the Sixth Circuit instructed the District Court to proceed to address Dr. Shull's qualification under Rule 702

Accordingly, as Plaintiff does not have competent expert testimony as required by Tennessee Code Annotated Section 29–26–115(b) to establish the elements of her cause of action in Section 29–26–115(a), the Magistrate Judge recommends that UTMG's Motion for Summary Judgment be GRANTED.

and *Daubert* only "if Dr. Shull is found competent under state law per Rule 601," (Appeal Order at 13), the Magistrate Judge recommends that the District Court need not address Dr. Shull's qualification to testify under Rule 702 and *Daubert.*